UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

NATHANIEL McDANIEL

VERSUS

MAJOR RICKY WILLIAMS, ET AL.

CIVIL ACTION

NO. 20-146-JWD-EWD

**RULING AND ORDER**

This matter comes before the Court on the *Motion for Summary Judgment* (Doc. 17) filed by Defendants Ricky Williams and the Louisiana Department of Public Safety and Corrections ("DPSC") (collectively, "Defendants"). Plaintiff Nathaniel McDaniel opposes the motion, (Doc. 22), and Defendants have filed a reply, (Doc. 25). Oral argument is not necessary. The Court has carefully considered the law, the facts in the record, and the arguments and submissions of the parties and is prepared to rule. For the following reasons, Defendants' motion is denied.

I.     **Relevant Factual Background**

Plaintiff is an inmate at Dixon Correctional Institute ("DCI") in Jackson, Louisiana. (*Pet. for Damages/Broken Finger* ("*Pet.*"), Doc. 1-2 at 1; McDaniel Decl., Doc. 22-2 (declaring under penalty of perjury that facts in the *Petition* are true and correct).) Defendant Ricky Williams was a Major at DCI. (*Pet.* ¶ 2, Doc. 1-2.)

Plaintiff attests that, on November 7, 2018, he was arrested on a Rule 14 violation in Dorm C of DCI. (*Pet.* ¶ 4, Doc. 1-2.) Williams placed Plaintiff in cuffs, and then, according to Plaintiff, "Williams did purposefully or negligently bend the tip of the finger and cause it to break." (*Id.* ¶ 5.) Williams "started bending the left ring finger on [Plaintiff's] left hand until he broke the finger." (*Id.* ¶ 12.) Plaintiff "did not resist or fight," but "he did scream out with pain as his finger was broken." (*Id.* ¶ 13.)

Plaintiff avers that he made a sick call for his injury the next day, but, even though "it was obvious the finger was broken," a nurse examined him and told him that he had an ingrown finger nail. (*Id.* ¶ 6.) In fact, his "finger was dislocated and broken," which necessitated a surgery and eventually led to an infection from poor medical care. (*Id.* ¶¶ 6–10.)

Plaintiff brings suit against Williams under 42 U.S.C. § 1983 alleging that Williams used excessive force in violation of the Eighth Amendment. (*Id.* ¶¶ 25–30.) Plaintiff also pleads negligence under Louisiana Civil Code article 2315 in the alternative because Williams "knew or should have known that twisting a finger could cause it to break and/or lead to serious personal injury." (*Id.* ¶ 32–33.) Finally, Plaintiff claims that DPSC is liable under a theory of *respondeat superior*. (*Id.* ¶ 34.)

## II.   Rule 56 Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). If the mover bears his burden of showing that there is no genuine issue of fact, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . . [T]he nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.' " *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–587 (1986) (internal citations omitted). The non-mover's burden is not satisfied by "conclusory allegations, by unsubstantiated assertions, or by only a 'scintilla' of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citations and internal quotations omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.' " *Matsushita Elec. Indus. Co.*, 475 U.S. at 587. Further:

> In resolving the motion, the court may not undertake to evaluate the credibility of the witnesses, weigh the evidence, or resolve factual

2

> disputes; so long as the evidence in the record is such that a reasonable jury drawing all inferences in favor of the nonmoving party could arrive at a verdict in that party's favor, the court must deny the motion.

*International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991).

**III.   Discussion**

    **A.   Exhaustion**

        *1. Parties Arguments*

Defendants begin by arguing that Plaintiff has failed to exhaust his administrative remedies. (Doc. 17-1 at 6.) Defendants maintain that exhaustion is mandatory, and its requirements are strictly construed. (*Id.* at 6–7.) Defendants assert that Plaintiff's ARP does not give fair notice of the basis for his claim. (*Id.* at 7–9.) Defendants say that courts typically look at the prison's internal rules on grievances, and Defendants then detail DCI's procedures. (*Id.* at 8.) Defendants cite a Fifth Circuit case in which the appellate court purportedly found no exhaustion as to certain claims. (*Id.* at 8-9.) Defendants then argue by analogy that Plaintiff's ARP does not adequately show that his claim is one for excessive force. (*Id.* at 9-10.) Defendants then go through each level of Plaintiff's ARP and appeal to show the deficiencies. (*Id.*)

Plaintiff responds first that exhaustion is an affirmative defense. (Doc. 22 at 2.) Under Federal Rule of Civil Procedure 8, Defendants were required to plead exhaustion beyond boilerplate and in such a way as to give Plaintiff fair notice of the defense. (*Id.* at 2-3.) Further, Plaintiff did adequately exhaust his remedies, as he stated in his ARP that his finger was broken during a use of force by Williams. (*Id.* at 3.) Thus, Defendants' motion lacks merit on this issue. (*Id.* at 4.)

Defendants make no argument about exhaustion in their reply. (*See* Doc. 25.)

### *2. Applicable Law*

"The Prison Litigation Reform Act of 1995 ('PLRA'), 42 U.S.C. §§ 1997e et seq., enacted to help courts more efficiently process prisoner lawsuits, requires federal courts to screen prisoner suits as early as practicable and dismiss complaints that fail to state a claim." *Herschberger v. Lumpkin*, 843 F. App'x 587, 590 (5th Cir. 2021) (citing 28 U.S.C. § 1915A; 42 U.S.C. 1997e(c)(1)). "The PLRA also requires inmates to exhaust all available administrative remedies before bringing a claim to federal court." *Id.* (citing 42 U.S.C. § 1997e(a)).

"The Supreme Court has held, however, that the failure to exhaust administrative remedies is an affirmative defense and must generally be pled by defendants in order to serve as the basis for dismissal." *Id.* (citing *Carbe v. Lappin*, 492 F.3d 325, 327-28 (5th Cir. 2007) (citing *Jones v. Bock*, 549 U.S. 199, 216 (2007))). "Inmates are not required to plead or otherwise demonstrate exhaustion in their complaints." *Id.* (citing *Carbe*, 492 F.3d at 328). "A district court may only dismiss a claim sua sponte based upon failure to exhaust if such failure is 'apparent from the face of the complaint.' " *Id.* (citing *Carbe*, 492 F.3d at 328 n.9 (citing *Jones*, 549 U.S. at 215)).

Additionally, "Federal Rule of Civil Procedure 8(c) requires an affirmative defense to be set forth in a defendant's responsive pleading, with the failure to comply usually resulting in waiver of the defense." *Neal v. Hinds Cnty., Mississippi*, No. 18-590, 2021 WL 1268382, at *2 (S.D. Miss. Apr. 6, 2021) (citing *Vanhoy v. United States*, 514 F.3d 447, 450 (5th Cir. 2008)). "A well-established exception to this general rule is if 'a defendant raises the issue at a pragmatically sufficient time, and if the plaintiff is not prejudiced in its ability to respond, there is no waiver of the defense.' " *Id*. at *2 n.3 (quoting *Vanhoy*, 514 F.3d at 450 (internal quotation marks and citations omitted)). "The question of prejudice 'considers whether the plaintiff had sufficient notice

4

to prepare for and contest the defense.'" *Id.* (quoting *Lee v. United States*, 765 F.3d 521, 525 (5th Cir. 2014) (citation omitted)).

### 3. Analysis

Having carefully considered the matter, the Court will deny Defendants' motion. While it is questionable whether an excessive force claim is within the scope of this ARP, the Court ultimately need not resolve that question. Because Defendants did not specifically plead exhaustion in their Answer (*see* Doc. 8 at 1-2), they have waived the defense under the above authorities.

Further, this is not a situation where such failure can be excused. First, it is not "apparent from the face of the complaint" that Plaintiff's excessive force claim was not exhausted; to the contrary, Plaintiff expressly pleads that, "To the extent any administrative remedy may be required, same were exhausted through completion of second step through DCI 2019-16 on July 11, 2019." (*Pet.* ¶ 2, Doc. 1-2.)

Second, the Court finds that the exception to the affirmative defense pleading requirement does not apply. Defendants have made no showing that they have raised this issue at a "pragmatically sufficient time.," nor is any argument advanced in reply that Plaintiff had "sufficient notice to prepare for and contest the defense." *Neal*, 2021 WL 1268382, at *2 n.3.

In sum, Defendants have waived their exhaustion defense, and no exception applies. Consequently, this part of Defendants' motion will be denied.

### B. Excessive Force

#### 1. Parties' Arguments

Defendants next assert that Williams is entitled to qualified immunity. (Doc. 17-1 at 11.) "[E]ven though Major Williams used force, the circumstances warranted the use of force and the

5

level of force was proportional to Plaintiff's actions." (*Id.* at 12–13.) As to the extent of the injury, Defendants say, "Defendants do not dispute that after November 7, 2018, medical personnel determined Plaintiff broke his finger. The questions are when and how did Plaintiff break his finger." (Doc. 17-1 at 14.) The initial sick call completed on November 7, 2018 (the day of the incident) shows that Defendant had no broken finger, and it was not until November 11, 2018 (four days later) that Plaintiff made a sick call complaining about his finger. (*Id.* at 14–15.) There is no medical record showing that Williams broke Plaintiffs' finger. (*Id.* at 15.)

As to the other *Hudson* factors, there was a need to use force, given Plaintiff's behavior on the day of the incident of acting erratically and hostilely and not complying with orders. (*Id.*) Williams acted reasonably and did not apply force excessively or in violation of DCI's Use of Force Policy. (*Id.* at 15–16.) On top of all of this, Plaintiff was intoxicated on syntenic marijuana at the time of the incident, thereby furthering the need to use force. (*Id.*) As to the relationship between the need and amount of force, Williams used only the force necessary to get Plaintiff to comply, and the amount of force was proportional to Plaintiff's actions. (*Id.* at 17.) Given Plaintiff's conduct of swinging his arms and acting violently, there was a perceived threat, and Williams tried to temper a forceful response. (*Id.* at 17–18.)

Concerning the second part of the qualified immunity analysis, Defendants maintain that "it is clear that Plaintiff's constitutional right in the situation in question was not clearly established." (*Id.* at 20.) "It is neither objectively unreasonable nor was it clearly established that bringing an offender, whom is intoxicated and behaving in a belligerent manner, to the ground and restraining him is a violation of said offender's constitutional rights. As such, Defendants are entitled to qualified immunity." (*Id.*)

6

Plaintiff responds that Williams offers no explanation as to how Plaintiff's finger was broken after the arrest, and the medical evidence contradicts Defendants' position. (Doc. 22 at 7.) Plaintiff highlights Defendants' acknowledgement that the key question in this case is "when and how [ ] Plaintiff [broke] his finger." (*Id.* (citing Doc. 17-1 at 14).) Plaintiff then quotes portions of the *Petition* and says that, while Williams has denied such allegations, "[t]hese opposing factual assertions create a genuine issue of material fact for trial." (*Id.* at 8.)

Defendants respond that Plaintiff cannot create a question of fact by contradicting his own prior statements. (Doc. 25 at 1.) Defendants say that it is undisputed that, when Plaintiff was evaluated by medical personnel on November 7, 2018, he had no injury and voiced no complaints. (*Id.* at 1–2.) Plaintiff's ARP also contradicts his declaration, as the ARP states that he "noticed" his finger was broken sometime after being placed on lockdown. (*Id.*) Defendants maintain that Plaintiff's assertions are contradictory. (*Id.*) Finally, Plaintiff does not dispute any of Defendants' analysis of the *Hudson* factors, so he has not met his burden of overcoming qualified immunity. (*Id.* at 2–3.)

### *2. Applicable Law*

"A qualified immunity defense alters the usual summary judgment burden of proof." *Bourne v. Gunnels*, 921 F.3d 484, 490 (5th Cir. 2019) (quoting *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010)). "Once a government official asserts QI, the burden shifts to the plaintiff to 'rebut the defense by establishing that the official's allegedly wrongful conduct violated clearly established law and that genuine issues of material fact exist regarding the reasonableness of the official's conduct.' " *Id.* (quoting *Gates v. Tex. Dep't of Protective & Regulatory Servs.*, 537 F.3d 404, 419 (5th Cir. 2008)). "[A]ll inferences are drawn in [the plaintiff's] favor." *Id.* (quoting *Brown*, 623 F.3d at 253). "But 'a plaintiff's version of the facts should not be accepted for purposes

7

of [QI] when it is "blatantly contradicted" and "utterly discredited" by video recordings.' " *Id.* (quoting *Hanks v. Rogers*, 853 F.3d 738, 744 (5th Cir. 2017) (citation omitted));

"Regarding QI, 'the core judicial inquiry' 'whenever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause' is 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.' " *Id.* at 491 (quoting *Hudson v. McMillian*, 503 U.S. 1, 6–7 (1992)). *"*Courts analyze (1) 'the extent of [the] injury suffered,' (2) 'the need for [the] application of force,' (3) 'the relationship between that need and the amount of force used,' (4) 'the threat reasonably perceived by the responsible officials,' and (5) 'any efforts made to temper the severity of a forceful response.' " *Id.* (quoting *Hudson*, 503 U.S. at 7 (internal quotation marks and citation omitted)).

"The amount of force that is constitutionally permissible . . . must be judged by the context in which that force is deployed." *Id.* at 491–92 (quoting *Ikerd v. Blair*, 101 F.3d 430, 434 (5th Cir. 1996)). "Courts must 'decide excessive force claims based on the nature of the force rather than the extent of the injury.' " *Id.* at 492 (quoting *Wilkins v. Gaddy*, 559 U.S. 34, 34 (2010) (per curiam)). "An inmate need not establish a 'significant injury' to pursue an excessive force claim because '[i]njury and force . . . are only imperfectly correlated, and it is the latter that ultimately counts.' " *Id.* (quoting Wilkins, 559 U.S. at 37–38).

### 3. Analysis

Defendant is correct that the "questions [in this case] are when and how did Plaintiff break his finger." (Doc. 17-1 at 14.) But, the Court finds that reasonable juries could reach different answers to this question, so summary judgment is inappropriate.

Williams declares that Plaintiff was "behaving in an erratic and hostile manner;" that he was "out of control, violently swing[ing] his arms, screaming and yelling;" that he was given "direct verbal orders to cease his actions" but he disregarded same; and that he was brought to the ground by Williams so that Williams could "regain control[.]" (Williams Aff. ¶¶ 7–14, Doc. 17-4.) Williams says, "At no time did I grab onto or bend any of offender McDaniel's fingers." (*Id.* ¶ 19.) If Williams' testimony is believed, the forced was applied "in a good-faith effort to maintain or restore discipline." *Bourne*, 921 F.3d at 491.

However, Plaintiff presents evidence, in the form of his declaration, that Williams "started bending the left ring finger on [Plaintiff's] left hand until he broke the finger." (*Pet.* ¶ 12, Doc. 1-2; McDaniel Decl., Doc. 22-2.) Plaintiff "did not resist or fight," but "he did scream out with pain as his finger was broken." (*Id.* ¶ 13.) Thus, under Plaintiff's version of events, force was applied "maliciously and sadistically [by Williams] to cause harm." *Bourne*, 921 F.3d at 491.

Given the starkly contrasting versions of events, summary judgment is inappropriate. *See id.* at 492–93 ("Bourne and defendants offer competing versions of what occurred during the use of force and whether defendants applied force after Bourne stopped resisting and was restrained. . . . The video does not resolve the dispute, so there remains a genuine dispute of material fact."); *Mack v. Benjamin*, No. 13-552, 2015 WL 13505345, at *2 (M.D. La. Aug. 13, 2015) (deGravelles, J.) (denying summary judgment because "[t]his Court has been presented with two conflicting stories."); *Granger v. Babin*, No. 12-628, 2014 WL 2197064 (M.D. La. May 27, 2014) (denying summary judgment because the "evidence paints two vastly different pictures of the events that occurred" on the day of the incident). Again, at the summary judgment stage, the Court cannot make credibility calls or weigh evidence, and the key question is whether "the evidence in the record is such that a reasonable jury drawing all inferences in favor of the nonmoving party could

9

arrive at a verdict in that party's favor[.]" *International Shortstop*, 939 F.2d at 1263.  Because the Court finds that a reasonable jury could reach a verdict in Plaintiff's favor, the motion must be denied.

Defendants cite *Drake v. Spring Indep. Sch. Dist.*, No. 20-20376, 2021 WL 3176081, at *5 (5th Cir. July 27, 2021) for the proposition that "a nonmoving party may not manufacture a dispute of fact merely to defeat a motion for summary judgment," but Defendants' argument is misplaced. This statement from *Drake* is made in reference to the "sham affidavit doctrine," which "prevents a party who has been deposed from introducing an affidavit that contradicts that person's deposition testimony without explanation." *Id.* (citation omitted).

Even assuming an ARP operates the same as deposition testimony and that this doctrine could apply (which strikes the Court as questionable), here the ARP does not *contradict* Plaintiff's declaration; the ARP states, on November 7, 2018, when Plaintiff was placed on lockdown, he "notice[d] [his] finger . . . was bent and look to be broken." (Doc. 17-10 at 2.)  Plaintiff said, "I was restrained by Major Ricky Williams in doing that to me my finger was dislocated and broke." (*Id.*) The Court cannot say that this statement contradicts Plaintiff's sworn testimony.

Plaintiff's medical records also do not warrant summary judgment.  Defendants point to the fact that Plaintiff's November 7, 2018 initial assessment makes no mention of the broken finger, (Doc. 17-9 at 8–10), and a reasonable juror could certainly conclude from that absence that Plaintiff was not injured by Williams.  But an equally plausible solution—and one supported by his declaration—is that (1) Plaintiff, who is listed on the medical record as being intoxicated at the time of the assessment, could not communicate the problem with finger, (*see id.*), an inference that is supported by the fact that Plaintiff gave no statement on the Accident & Incident Report, (*id.* at 9), and (2) the nurse incorrectly diagnosed Plaintiff or ignored his condition the following day,

10

(*see Pet.* ¶ 6, Doc. 1-2 (stating that he made a sick call for his injury the next day, but, even though "it was obvious the finger was broken," a nurse examined him and told him that he had an ingrown finger nail (*id.* ¶ 6)). Again, questions of fact preclude summary judgment.[1]

Additionally, the video evidence does not contradict Plaintiff's account. The relatively short clip submitted by Defendant shows Plaintiff prone on a stretcher *after* the incident and admitting to using synthetic marijuana. (*See* Doc. 17-6.) This evidence does not reveal what happened *during* the incident (or even the condition of Plaintiff's finger). Thus, "[t]he video does not resolve the dispute, so there remains a genuine dispute of material fact." *Bourne*, 921 F.3d at 493.

Indeed, when construing the video in a light most favorable to Plaintiff, the short clip *supports* Plaintiff's position. Contrary to Defendants' account of Plaintiff being violent and belligerent, in the clip, he is completely docile and, as Plaintiff says, "extremely lethargic." (Doc. 22 at 9.) Plaintiff's condition also supports the notion that he would be too "out of it" to either feel his broken finger or convey the problem to the nurse. (*Id.*)

Finally, Defendants are not entitled to qualified immunity. When construing the evidence in a light most favorable to Plaintiff (namely, his declaration, which reflects a lack of resistance or fighting) and drawing reasonable inferences in his favor (including that Williams bent Plaintiff's finger for no good reason but rather to cause harm), every reasonable officer would know that Williams' conduct was objectively unreasonable in light of clearly established law. Thus, Williams is not entitled to qualified immunity. *See Granger*, 2014 WL 2197064, at *5 (denying

---

[1] The Court also notes that the November 11, 2018, medical records support Plaintiff's position. In the assessment/comment section, the nurse writes that, according to offender, Wednesday he was involved in struggle . . . and today decided to make emergency." (Doc. 17-9 at 7.) The Wednesday preceding November 11, 2018 was November 7, 2018, the day of the alleged incident. Thus, Plaintiff's declaration is consistent with prior accounts given in the medical records.

11

summary judgment on the issue of qualified immunity because "there [were] critical differences between the evidence presented by the parties, with one side presenting evidence that the officers' actions were reasonable and justified, and the other side presenting evidence of an attack on the Plaintiff."); *Mack*, 2015 WL 13505345, at *2 (denying summary judgment because, "as in *Granger*, there are issues of fact as to whether Benjamin's conduct was objectively reasonable under clearly established law."). As a result, Defendants' motion will be denied.

### C. Negligence

#### *1. Parties' Arguments*

Defendants next seek dismissal of Plaintiff's state law negligence claim. (Doc. 17-1 at 20.) Defendants assert, "The § 1983 and state law claims both arose from the same set of facts. Thus, this Court's determination as it relates to Plaintiff's excessive force allegations should also apply to Plaintiff's state-law claims." (*Id*.) Defendants say that a claim under Louisiana Civil Code article 2321 should not apply because there is no animal that caused the injury. (*Id.* at 21.) As to Article 2315, Defendants say that Williams had a duty to ensure that DCI was safe and that order was maintained, and Williams had a duty to stop Plaintiff when Plaintiff was behaving violently and erratically. (*Id.*) Further, Williams used the least amount of force possible. (*Id.*) Again, the medical records show no injury after the incident; "[i]t wasn't until four days after this incident, on November 11, 2018, that Plaintiff complained about having a hurt finger even though during those four days medical personnel visited the cell block multiple times, officers made routine rounds, and Plaintiff even attended his disciplinary hearing." (*Id.* at 22.) In sum, Williams breached no duty, and Plaintiff suffered no injury. (*Id.*) And, because the claim against Williams fails, so too does the claim against DPSC. (*Id.*)

Plaintiff responds that, if the jury did not find that Williams broke his finger maliciously and sadistically to cause harm, that same jury could find, in the alternative, that Williams accidentally caused the injury. (Doc. 22 at 8.) Williams may have tried to "exert a little pain and it just accidentally broke." (*Id.*) Plaintiff maintains that the video supports his case for the above reasons. (*Id.* at 9.) Plaintiff then goes through the disciplinary report, medical records, and ARP as further support for his conclusions. (*Id.* at 9–10.) Plaintiff also contends that the medical records are incomplete and reflect that Plaintiff received care for his finger *before* November 11. (*Id.* at 11.) Additionally, Plaintiff maintains that the State was not negligent; rather, Plaintiff asserts a claim of vicarious liability against the State. (*Id.* at 11–12.) Plaintiff argues extensively that his finger was in fact broken. (*Id.* at 12–15.)

Despite Defendants' initial position that the § 1983 claim and negligence claim are based on the same facts and that the Court's determination as to one "should also apply" as to the other, (Doc. 17-1 at 20), Defendants say in reply:

> Plaintiff alleges his finger was broken "purposefully or negligently". Doc. 22, p. 7 (quoting Petition at ¶5). It cannot be both. The Plaintiff bears the burden of proof on both the §1983 and state law negligence claims. Therefore, the Plaintiff was required to come forth with some evidence showing he will be able to meet his burden of proof at trial. Here, the Plaintiff offers no explanation as to how his finger was broken "negligently" as opposed to purposefully.

(Doc. 25 at 4.) According to Defendants, Plaintiffs assert an excessive force claim, not one based on based on any accidental injury. (*Id.*) Because Plaintiff has no evidence of this alternate theory, summary judgment is warranted. (*Id.*)

### *2. Applicable Law*

"The duty-risk analysis is the standard negligence analysis employed in determining whether to impose liability under" Article 2315. *Lemann v. Essen Lane Daiquiris, Inc.*, 2005-1095

13

(La. 3/10/06); 923 So.2d 627, 632–33 (citing *Mathieu v. Imperial Toy Corp.*, 94-0952 (La. 11/30/94); 646 So. 2d. 318, 321). Under this analysis, a plaintiff must prove five separate elements:

> (1) the defendant had a duty to conform his conduct to a specific standard (the duty element); (2) the defendant's conduct failed to conform to the appropriate standard (the breach element); (3) the defendant's substandard conduct was a cause in fact of the plaintiff's injuries (the cause-in-fact element); (4) the defendant's substandard conduct was a legal cause of the plaintiff's injuries (the scope of liability or scope of protection element); and (5) the actual damages (the damages element).

*Id.* at 633 (citing *Fowler v. Roberts*, 556 So. 2d 1, 4 (La. 1989), *reh'g granted on other grounds and original opinion reinstated as supplemented*, 556 So. 2d at 13 (La. 1990) ). "A negative answer to any of the inquiries of the duty-risk analysis results in a determination of no liability." *Id.* (citing *Mathieu*, 646 So. 2d at 326).

### 3. Analysis

Having carefully considered the matter, the Court will deny summary judgment. Preliminarily, while the Petition mentions Article 2321, it's clear from the *Petition* as a whole and Plaintiff's opposition that he is in fact making claims for negligence and *respondeat superior*. (*See Pet.* ¶¶ 32–34, Doc. 1-2.)  Thus, the Court need not dismiss a claim that is not made.

Turning to the heart of this issue, the Court agrees with Defendants' statement in their original memorandum rather than their reply: the negligence claim should be disposed of the same way as the § 1983 excessive force claim.

More specifically, Plaintiff has submitted evidence of the facts that Williams bent the tip of his finger and broke it and that Plaintiff was not fighting or resisting at the time. (*Pet.* ¶¶ 5, 13, Doc. 1-2.)  One reasonable inference from these facts is that Williams acted maliciously and sadistically so as to support a § 1983 claim.  But another reasonable inference is that Williams

14

engaged in this conduct without the requisite intent but still in a manner that fell below the standard of care for correctional officers.

In short, the claims are properly pled in the alternative, and Plaintiff has submitted sufficient summary judgment evidence for both to survive. Consequently, Defendants' motion will be denied.

### IV.  Conclusion

Accordingly,

**IT IS ORDERED** that the *Motion for Summary Judgment* (Doc. 17) filed by Defendants Ricky Williams and the Louisiana Department of Public Safety and Corrections is **DENIED**.

Signed in Baton Rouge, Louisiana, on June 30, 2022.

_____
**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**